IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JEFFREY WADE COLCLOUGH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 3:15-cv-58-TFM<br>(WO) |

**MEMORANDUM OPINION**

**I.  Introduction**

Plaintiff Jeffrey Wade Colclough ("Colclough" or "Plaintiff") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ found that Colclough was not under a "disability" as defined in the Social Security Act and denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be REVERSED and REMANDED.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. The Commissioner's Decision**

Colclough was 48 years old at the time of the hearing, is a high school graduate, and holds an Associate Degree in Applied Sciences. R. 50. He has prior work experience as a manager at a switch manufacturing company and a handyman. R. 53, 281. Colclough

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

alleges that he became disabled on December 5, 2010, due to back and leg pain. R. 54-55. After the hearing, the ALJ found that Colclough suffers from severe impairments of psoriasis and degenerative disc disease and non-severe impairments of gastroesophageal disease, opioid dependence[4], and obesity. R. 26. The ALJ found that Colclough retains the residual functional capacity to perform the full range of light work. R. 27. Relying in part on testimony from a vocational expert, the ALJ concluded that Colclough is able to return to his past work as a production manager. R. 30. Accordingly, the ALJ concluded that Colclough is not disabled. *Id.*

**B. The Plaintiff's Claims**

Colclough presents the following issues for review:

(1) The RFC determination is unsupported by substantial evidence because the ALJ improperly failed to rely on any opinion evidence in the record, particularly the opinion of Dr. Parent, and failed to include a limitation for changing positions between sitting and standing at will.

(2) The credibility determination is unsupported by substantial evidence.

(3) The ALJ erred as a matter of law at Step 5 in finding that Plaintiff could perform his past work as he actually performed it, as such finding is contrary to the vocational expert's testimony.

(4) The ALJ erred at Step 4 because he relied on vocational expert testimony that was elicited in response to an incomplete hypothetical question.

---

[4] The court notes that nothing in the medical records indicates that Colclough exhibits drug-seeking behavior or is a malingerer.

Doc. No. 11, Pl. Br. 5.

## IV. Discussion

Plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence.[5] *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of the plaintiff's specific arguments, with the exception of his contention that the ALJ improperly discredited his allegations of pain and discounted the treating physician's opinion, because the court concludes that the ALJ erred as a matter of law, and, thus, this case is due to be remanded for further proceedings.

Colclough testified that his pain was so severe that he was unable to work between the date of onset, December 5, 2010, and the date he was last insured on June 30, 2011. He also alleged that his pain and impairments lasted for a continuous period of not less than twelve months. The ALJ did not credit this testimony. The court cannot conclude that the ALJ's discrediting of Colclough's allegation of severe pain is supported by substantial evidence.

---

[5] The Commissioner's regulations also require that a written decision contain several specific elements.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based*.

42 U.S.C. § 405(b)(1) (emphasis added).

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.  *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain.  *Landry,* 782 F. 2d at 1553.  In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such support then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

The medical records indicate that Colclough has received extensive treatment for his chronic back condition, including four back surgeries and one procedure to remove a

neurofibroma.

- In 1998, Colclough underwent a laminectomy and diskectomy for a right-sided disk herniation. R. 529.

- In 2001, Colclough underwent an L-5-S1 hemilaminectomy and diskectomy. R. 529.

- On July 25, 2011, Colclough underwent a CT-guided fine needle biopsy to remove a neurofibroma from his chest. R. 399.

- On September 28, 2011, Dr. Rudolph Buckley, a spine surgeon, noted:

    MRI of the lumbar spine shows L4-5 and L5-S1 herniated disks/stenosis with questionable congenital stenosis.

    X-rays of the lumbar spine (AP, lateral and spot view in the standing position) shows five lumbar non-rib vertebrae. The pelvis appears to be level. Slight leftward tilt to the spine overall. No acute findings. No significant spina bifida. The lateral view shows mild loss of lordotic curve overall. There appears to be narrowing of the L5-S1 interspace approximately 70% to 80% when compared with the levels above. No obvious spondylosis, pars fracture, or spondviolisthesis at these levels. There is a suggestion of a possible wedge compression deformity at T12 anteriorly. No acute findings otherwise.

    R. 531. The surgeon recommended surgery "[s]ince the patient has failed all conservative treatments including physical therapy, pain management with injections and pain medications." *Id*. The surgeon performed an L4-S1 posterior decompression; instrumented fusion with bilateral pedical screw fixation; interbody fusion with graft on putty and cage from medtronics; posterior lateral fusion with auto graft. R. 514. Upon discharge, Dr. Buckley diagnosed L4-S1 spinal stenosis, low back pain, lumbar radiculopathy, internal disk derangement, status post L5-S1 diskectomy and currently with thoracic tumor. *Id*.

7

- On April 19, 2013, Colclough underwent an L4-L5 anterior lumbar diskectomy/decompression; L4-L5 anterior fusion; right iliac crest bone graft; implantation of material fusion implants, single implant at L4-5 interspace; anterior instrumentation/application of the lumbar pate L3 L5; and use of bone morphogenetic protein/BNP. R. 606. The surgeon's post-operative diagnosis was pseudoarthrosis, status post posterior fusion, L4-L5, and degenerative disc disease with disk protrusion/HNP L4 L5. *Id.*

At the administrative hearing, Colclough testified that he was unable to pick up his twenty pound granddaughter and that he suffered severe back pain during the relevant time period. R. 66-67, 72. He stated that, despite receiving treatments such as nerve block injections and medication, he "never felt good enough to where [he] could go and do something for a sustained period of time and not have to sit down, stand up or lay down, which is how the majority of [his] days were spent" and that "[i]f [he went] for a walk, [he was] wiped out and laying down for two, three hours to recover from that." R. 72.

In his analysis, the ALJ acknowledged that Colclough's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 29.

First, the ALJ discredits Colclough's allegations of pain based on his testimony of daily activities. Specifically, the ALJ found:

> "The claimant testified that he has severe pain that prevents him [from] performing most activities. However, the claimant has admitted to certain abilities during the period at issue, i.e. December 5, 2010 to June 30, 2011, which provides support for the residual functional capacity conclusion in this decision. During that period the claimant stated he was able to walk two miles, had no problems attending for personal hygiene, and cared for his pet.

> During that period, imaging revealed no cord compression or other significant finding consistent with the level of pain the claimant alleged. His physical examinations were within normal limits prior to the DLI. Lastly, the record shows the claimant had a severe back impairment prior to the DLI, but there is no objective evidence of record revealing his impairment was disabling or as severe as it appears to be following his surgery in September 2011. To the contrary, in April 2011, the claimant's treating source stated he did fairly well after his last back surgery."

R. 28.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ concluded that Colclough's allegations regarding his back condition were not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's analysis, the court cannot conclude that substantial evidence supports the ALJ's credibility determination.

First, the ALJ discredits Colclough's allegations of pain because Colclough testified that "he is able to walk two miles." R. 28. The ALJ's finding, however, is based on a mischaracterization of Colclough's description of his daily activities. For example, Colclough testified that, in October of 2011, he was able to take small walks three to five times a day until he reached a total of two miles. R. 61. He explained that the "orthopedic specialist told [him] that walking was good for [his] back" and that "it would take several trips to get there." R. 58, 70.

The ALJ also discounts Colclough's allegations of pain because he had "no problems attending to personal hygiene." R. 28. The ALJ, however, ignored Colclough's testimony that his wife had to wash his legs and feet and towel dry him after showering and that he had difficulty putting on his socks and shoes. R. 55. The record indicates that Colclough was able to dress, bathe, feed himself, and attend to his personal hygiene when he was "heavily medicated on two different types of Morphine, along with some other medications" and therefore did not feel "an awful lot of pain" at the time. R. 55-56. This court, therefore, cannot conclude that the ALJ's determination that he had "no problems" with personal hygiene is supported by substantial evidence.

The ALJ also found that Colclough's allegations of pain should be discounted because he was able to "care for his pet." R. 28. The record, however, indicates that Colclough takes care of his dog by giving it food and water and letting it outside. R. 289. The court questions whether the ability to perform simple tasks, such as refilling a food bowl or opening and closing a door, is substantial evidence that Colclough's allegations are not so

10

severe as to give rise to disabling pain.

In addition, the ALJ relies on medical records from prior back surgeries in 1998 and 2001 to discredit Colclough's allegations of pain. For example, the ALJ found his pain was not "as severe as it appears to be following his surgery in September 2011" because "in April 2011, the claimant's treating source stated he did fairly well *after his last back surgery*." R. 28. The problem with the ALJ's finding is that Colclough's previous back surgery occurred over nine years before the date of onset. The ALJ also determined Colclough has the residual functional capacity to perform the full range of light work because he was able to perform medium to heavy work after undergoing back surgeries in 1998 and 2001. R. 28. This court cannot conclude that Colclough's ability to perform work after undergoing back surgeries over ten years prior to the relevant time period is substantial evidence that his allegations of pain in 2010 and 2011 are not as severe as alleged.

The ALJ also discounts Colclough's allegations of pain because "[i]n November 2011, the notes state 'he is not having any pain in his back any longer' and the treating doctor concluded that the back pain 'has resolved.'" R. 29. The ALJ, however, fails to consider the physician's findings in full. The medical records indicate that, on November 9, 2011, Colclough presented to his treating physician, Dr. Colleen Parent, at Community Memorial Hospital Family Health Clinic with complaints of pain in his legs and chest and numbness in his arms. R. 553. His medications included Neurontin, Morphine Sulfate 15 mg and Morphine Sulfate ER 15 mg. *Id*. Dr. Parent found that "his back pain has resolved, his leg pain is still present, will stop the long acting morphine and just continue with the short acting

11

morphine, will being weaning down off of that." R. 554. Despite being under the influence of narcotics prescribed to treat moderate to severe pain, Colclough's back pain did not in fact resolve. On January 4, 2012, Colclough returned to Dr. Parent with complaints of "pain in his hips and lower back, the more he drops the morphine, the more he figures it out he is having pain." R. 551. The physician noted that he "has been wearing a clamshell brace for 4 months, he has 2 months to go." *Id.* Dr. Parent assessed a disc disorder and found "the pain in his legs is improved after the surgery but he continues to have pain in his back and hips, has been controlled with morphine to this point. . . ." R. 552.

The ALJ then compounded his errors by failing to consider the side effects of Colclough's medications on his ability to work. Colclough testified that he was unable to have an intelligent conversation and "a lot of the times ... laid around" while under the influence of narcotic medication. R. 55-56. He testified that he opted for a third surgery in 2011 because "nothing else seemed to be working other than being completely wacked out of my gourd on medication." R. 74. The medical record is also replete with references to the side effects of medication. For example, on May 19, 2011, Dr. Parent found that "pain medication does seem to make him a little loopy." R. 368. The ALJ was required to consider whether the plaintiff experiences any side effects from his medications, and if so, whether those side effects impact his ability to work. The side effects of medication may render a claimant disabled or at least contribute to a disability. *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981). The record demonstrates that, during the relevant time period, Colclough was routinely prescribed the following medications: Lortab

12

(acetaminophen/hydrocodone bitartrate)[6]; MS Contin (morphine sulfate)[7]; Neurontin (gabapentin)[8]; and Flexeril (cyclobenzaprine hydrochloride).[9] R. 364, 367-69, 372, 405, 471, 488, 513, 516, 529, 553. However, the ALJ made no findings regarding the effects of these medications on Colclough's ability to work, and thus, the court is unable to determine whether the ALJ's conclusion that Colclough is not disabled is supported by substantial evidence.

This court likewise is unable to conclude that the ALJ's discounting of Dr. Parent's opinion that Colclough would miss more than four days of work per month, could never lift more than twenty pounds, and could stand, walk, or sit for no more than two hours in an eight-hour day is supported by substantial evidence.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner also demonstrates a similar preference for the opinion of treating physicians.

---

[6] Lortab is prescribed for management of moderate to moderately severe pain. Physician.pdr.net/drug-summary/lortab-tablets?druglabelid=3486&id=3567.

[7] MS Contin is prescribed for "[m]anagement of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative options are inadequate." Physician.pdr.net/drug-summary/ms-contin?druglabelid+2068&id=1222.

[8] Neurontin is prescribed for the treatment of postherpetic neuralgia. Physician.pdr.et/drug-summary/neurontin?druglabelid=2477.

[9] Flexeril is used "[a]djunct to rest and physical therapy for relief of muscle spasm associated [with] acute, painful musculoskeletal conditions." Physician.pdr.net/drug-summary/cyclobenzaprine-hydrochloride?druglabelid=3089.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any

reasons for discounting the opinion.  *Schnorr*, 816 F.2d at 581.

After reviewing the medical records, the ALJ assigned little weight to Dr. Parent's opinion "as the absence of any significant objective clinical findings cannot be reconciled with the extreme functional limitation she suggests."  R. 30.  The ALJ incorrectly found that Dr. Parent saw Colclough on no more than two occasions and that she never treated him before September 2011.  The record, however, indicates that Dr. Parent was his treating physician for over 20 years years and that she provided extensive treatment during the relevant time period.  R. 283, 296, 367, 369, 371, 374, 378, 383, 384, 518.  Moreover, as previously discussed, the record is replete with objective medical evidence, including MRIs and CT scans, indicating the need for extensive back surgery.

The ALJ also discounts Dr. Parent's opinion about Colclough's pain and limitations based on her finding in September 2011 that Colclough was "healthy, well developed, [and] in no acute distress."  R. 29.   The ALJ, however, failed to consider the finding in its complete context and ignored the physician's additional findings.  The medical records indicate that Dr. Parent conducted a pre-operative consultation for the back surgeon on September 21, 2011. R. 516-518. The court recognizes that Dr. Parent found that Colclough appeared healthy and well developed with no signs of acute distress or obvious discomfort and that he was an acceptable risk for back surgery. R. 517. The treating physician's notes, however, also indicate that Colclough was taking "MS Contin and morphine sulfate," specifically "3 short-acting morphine tabs per day, occasionally the fourth tab and 2 long acting medications during the day."  R. 516.  In addition, Dr. Parent noted that Colclough

15

"has been feeling more pain in the left side and down his leg," that he "has a lot of numbness and tingling in his arms, he gets hot flashes a few times a day, [and] he has body tremors after standing 15 minutes." R. 516.  The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992)

The ALJ also discounts Dr. Parent's opinion based on medical records indicating that Colclough's back condition improved dramatically after his last back surgery. R. 30.  The problem is that the "last back surgery" occurred after the relevant time period on April 19, 2013.  The court, therefore, cannot conclude that the ALJ's decision to assign little weight to Dr. Parent's opinion on this basis is supported by substantial evidence.

For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case should be remanded for further proceedings.

## V.  CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

DONE this 23rd day of September, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE